Good morning, Your Honors. I'm Christian Reisner. I represent the Carpenters Pension Fund for Northern California. The case, of course, concerns withdrawal liability in a bankruptcy context. Withdrawal liability is of enormous importance to all pension funds such as ours. They are jointly trusteed. An equal number of employer and employee union trustees are supplied. They exist to provide pensions. That's all. The withdrawal liability system, really a unique one. Well, I know that ERISA is a tough area, and it is one of great importance. And so we always hope we have ERISA attorneys that specialize in just that. But the applicable cases deal with unpaid contributions, not with withdrawal liability. And so why should we treat the two the same? Yeah, I think that goes right to the heart of the case. I appreciate that very much. The reason we felt that we had to deal with the entire background was exactly that. And because we were having the Klein statement quoted at us a lot. Well, I mean, essentially there's sort of a request for us to go into uncharted areas. So that's, you know, I want to know why that would be the right thing to do. Very well. If we, for the sake of this argument then, I will proceed, given a background, that there are many courts that have looked to trust agreement language to determine what is a plan asset that would implicate ERISA fiduciary duties. Right. So you have to have a contractual agreement to make this withdrawal liability a contribution. That's correct. Okay. So where in the contract does the contract state that withdrawal liability is either a contribution to be made or a contribution at all? The contract does not use the term withdrawal liability, so far as I've looked high and low. Nor does the trust agreement, which is a sort of contract. But neither the trust agreement nor the collective bargaining agreements refer to it. It is simply a creature of statute, of law. So how do you conflate a creature of law to a contractual agreement? I mean, the cases say if you're going to make an unpaid contribution, an asset, you've got to make it clear in the agreement. So how are you going to import a statutory obligation, which does not even begin to exist until you no longer have to make contributions? That's what triggers withdrawal liability, is that your obligation to make contributions ended because you got out of the plan, the plan terminated. So I'm trying to figure out how that becomes a contractual obligation. If you look at it this way, the origin of withdrawal liability and the basis upon its computation, and this has been applied in bankruptcy circumstances, is to look at hours accrued. We're talking here about a determination, an assessment of withdrawal liability. That assessment will be a reflection in the manner set out in statute, but it will be a reflection of the and depend upon the share of the unfunded vested liability of the entire pension fund. Would you agree that the language could have been stronger? It could have been clearer here? If the trustees, we are dealing with ancient language. It is true. It has survived for a long time in a variety of situations with the law changing. I believe the trustees have regarded it as well. It's been very all-inclusive. Well, what is your best case to say that the contractual language here creates the fiduciary duty on withdrawal? Okay. We think the same language, essentially, that we have cited in reference to the monthly contributions. Recently, for example, a case, it was a recent case since the briefing had been done, I did submit it as a supplement because it was in the Eastern District of California, affirming a bankruptcy decision, a case called BOSS, B-O-S. That involves straight-up contributions. Yes, it did. But the analysis was the analysis that we propose here. The analysis was we look at the trust agreement. This is all we can ask, that the court look at the trust agreement. That is the concept that was rejected below, and that's the concept that we wish to see applied. We think we have a good shot at it. But why isn't it significant that the trust agreement defines the fund as including all of the contributions that are required, and it doesn't limit it to just the contributions that have actually been made? I thought that would support you. It says the concept is all contributions to be made. Yes. It includes all the contributions that are required to be made. That's a defined term, though, in the agreement, right? Yes. There is a definition of that term. I believe it's on page 4 of the quoted in our brief. It's talking about what you have to put in for the pension plan, right? What the pension plan is required to support the pension plan under the collective bargain agreement and the subscription agreement, I think, is how they define the work contributions. I'm coming back to my point that I'm having trouble getting withdrawal liability out of that. That's right. Let's go back for a moment. Well, to get just so that you help both of us along here, my understanding, just so that we have the right construct, is CLINE stands for the general rule that assets do not include unpaid contributions, right? So you have to fall within an exception. Plus, you have to be able to get us to look at the agreement, and then your argument is contributions to be made is what creates a fiduciary. That's correct. That's correct. So now, if I've got the right construct now, if you would answer Judge Vance's question. I think there are two answers that are related, really. But the first one is that ERISA in withdrawal liability requires withdrawal liability to be treated as a delinquent contribution. That's only for the means of collection. That's right, but that's where we are. Right, but it doesn't change the definition in a contract of what is a contribution. I mean, contracts are personal, are obligations between parties. I mean, the statute doesn't change the contractual agreement. It just says you can collect withdrawal liability, which we, Congress, are imposing on people who get out of plans based on unfunded liabilities, that you can collect that, you can get attorney's fees, you can sue for it, the same way you can sue for a delinquent contribution, but it's not a delinquent contribution. We don't think that the statute is changing the trust agreement, but it does speak of contributions in that way. That's what we are trying to do. Moving to the other leg of the point, contributions made, the payment made to the fund, that could include the withdrawal liability as well as payment made to the fund, in our view. But contribution is, read the rest of it. I mean, read the whole thing. Contribution is defined as, quote, the payment made to the fund by any individual employer under the provisions of the collective bargaining agreement or subscriber's agreement. Under the provisions of the CBA or the subscriber's agreement, so that's what a contribution to the fund is. And those agreements incorporate the entire trust agreement. But you said the trust agreement doesn't include withdrawal liability. It doesn't refer to it. We do believe it includes it because it includes all contributions to be paid in. In fact, it includes other amounts which are specified. So, I mean, your argument, it doesn't specifically refer to withdrawal liability, but you believe that the language to be paid includes withdrawal liability. Yes, and to put it another way, the withdrawal liability, once assessed, and here there's no question about whether it's been assessed and due. Mr. Moxley did not, you know, utilize arbitration. So it's quite clear under Allen v. Allen Transport, the case in the Ninth Circuit, that that means that now there's a waiver of any of those arguments. Well, okay, but essentially you don't have a case that says what you're asking us to say. You're asking us to go to say that. There's no reported decision applying with, you know, applying the doctrine of trust agreement language, you know, under Bankruptcy 523-A-4. To put it another way, to complete the thought here, it is a contribution to be contributed. It's required to be contributed to the fund. It falls regularly and easily within the concept of the trust agreement. Yes, Your Honor. Let me ask you this then. Okay, let's assume Mr. Moxley is an ERISA fiduciary because withdrawal liability is part of the trust race. Let's just assume that. It seems like he did not become a fiduciary until he failed to pay the fund. So how did Mr. Moxley's fiduciary duties arise before his, quote, unquote, wrongdoing? I don't know that that's the exact situation. What happened was there was the sequence of events prior to bankruptcy was one in which withdrawal liability was assessed. And, of course, it can't be assessed until there's no longer an obligation to pay. And the employment and work in the same covered by the agreement continues. And that was the situation. So this is an important matter, I might say parenthetically, for the fund. We need to know where we stand in this type of situation. The employer here, Mr. Moxley, continued operating. The assessment was made. He received notice of it, of his rights, of what the computations were, of what he could challenge it if he wished, and so forth. At that moment, however, when the assessment was made, our view is that he has an obligation. After all, it's entirely unfunded vested liabilities of this same fund. He has a duty, therefore, not extensive, only a duty respecting that amount. And it is a contribution. That is, it is an amount to be contributed in the future. So the recent Supreme Court case on defalcation, how does that affect this? Because the analysis wasn't done under that case. And it has changed the law. Yes, in Bullock. Bullock does not affect, you know, this theory, the question of looking at the trust agreement. Right, whether he's a fiduciary. Assuming he's a fiduciary, how does Bullock change the analysis? Well, Bullock, I mean, we did not make a record involving intent under A-4. Understandable. And we would have to do that now, and we would request leave to do that. And we think we have a right to do it. It would have to be remanded to determine whether there was a violation. For that purpose, yes. And, you know, we think that could be focused, and how to do it could be left to the bankruptcy judge. Would you like to save a little time for rebuttal? Yes, I would. All right. Thank you. Thank you. Good morning. Good morning. My name is Wayne Silver. I represent the appellee, Mr. Mosley. Your Honors, the bankruptcy judge, Gellin, in this case, figured out this issue in the first five minutes of his discussion on the plaintiff's motion for summary judgment. Judge Gellin said what's missing is a trust rest. There is no trust rest, because an obligation to pay is not sufficient to form a trust rest.  I don't think it does, Your Honor. I don't think it does. Isn't that the issue? And that's the issue? Exactly. That's the issue. Well, because you're reading, my reading of Klein says it stands for the general rule that the planned assets do not include unpaid contributions. But that Klein, but Klein does not preclude applying the exception the fund argues for here. It seems like the exception is commonly applied. So why shouldn't we look to the planned documents to determine whether Mr. Mosley is a fiduciary? Because in the bankruptcy context, when you try to figure out the trust rest, you have to ask the question, what was entrusted to the actor, to the debtor? Nothing. He is not a fiduciary over a tangible asset. He merely has a contractual obligation to pay something. And the problem is, and when you apply the Bullock analysis, which we are all learning as we go, and you try to figure out the actor's state of mind, you have to ask yourself, state of mind as to what, as to the failure to pay, or, as the plaintiffs are arguing, as the decision to use a personal asset to pay something other than the obligation to the trust fund. So what they're doing is they're conflating. Is that your question here for us? Yes. Yes, Your Honor, it is. Because when you have to figure out the trust rest to get to the Bankruptcy Code definition of defalcation, you have to decide, is it the unpaid contribution or is it the assets of the debtor? Because the bad act, if you will, which we're now going to look at the state of mind of the actor, is the use of personal assets to pay something other than the obligation to the trust fund. And in the argument of the plaintiff, they say that. They say that. I'm going to read the argument. And I know I shouldn't. It's not appropriate to do that. But I'm going to read it because it's so important. It's just a sentence. It says this. The record in this case, coupled with the settled law, make clear that the withdrawal liability claim is a planned asset belonging to the pension fund, and Moxley disposed of the withdrawal liability by refusing to pay it and instead pocketing or otherwise using those assets. That's from their points and authorities in support of the motion for summary judgment. Well, I mean, they're going to basically say he used it because he went into another business or something, right? Not exactly, Your Honor. What they're saying is he had an obligation to pay this. He had an obligation to pay the obligation. And what he did was he took his money and spent it somewhere else. And so what they're doing is they're taking the obligation, which we're told is the trust rest, and they're moving it aside, and they're saying, oh, no, no, the trust rest is really his personal assets. And he defalcated when he paid them to something else. Well, and I don't know whether the new case on defalcation really means that on the intent, but it would seem to me, I understand your argument that I'm trying to think if anyone just doesn't pay the withdrawal, then they would clearly have the intent because they would be they know that they've been told they're supposed to pay it. And so if they're paying something else, then they would satisfy Bullock if you accept that argument, right? Not exactly, Your Honor. Bullock requires a culpable state of mind regarding a breach of a fiduciary duty. So the debtor in this case would have to know that when he wrote a check to pay the power bill, instead of paying the liability, assuming he knew there was a liability at the time, and remember, this is a withdrawal liability, so he didn't know that at the time, but let's assume it was a regular contribution, he would have to know that he was breaching a fiduciary duty. And you're right. Well, I guess what it seems that you're both taking, like, the far end of the spectrum, and I'm trying to get the right answer here, that on the you're basically saying that under Klein, we can't look at the trust agreement, and therefore, and they're saying, okay, we have to look at the trust agreement, and also that the trust agreement says makes him a fiduciary. So, but on both ends of it, there isn't any exact authority for the positions that either of you are taking. Your Honor, that's, well, there's certainly no circuit authority. There's no Supreme Court authority. There's lower. Well, that's what I sort of look to. That's exactly right. That's what we would look to be. If we want to be correct, you know, my goal in life is to be correct here, but also to interpret Supreme Court precedent as I believe they would if they were deciding the case. So that's where I'm trying to get help here. And there's very little, because the entire idea of an exception to Klein and Collins is district court judges and bankruptcy court judges and magistrates struggling with the idea of, well, on the one hand, it sounds kind of convincing. You know, ERISA liability. We're all a little bit afraid of ERISA. And that's the Hemeter case. And Hemeter, frankly, has been misapplied in a number of these cases. The facts of Hemeter are very different from, for example, the facts in this case. And so when judges are struggling with this, there's this sort of doctrine that's percolating up that says, okay, there's an exception to Klein and Collins. Judge Schroeder was on the panel that wrote both Klein and Collins. I think there is not an exception. And I think the importance of this case and the opportunity for this Court is to clarify that and to say, look, just because you define something as a planned asset doesn't make it a trust rest for purposes of the Bankruptcy Code, because the concept of a defalcation that dates back to the very beginning of bankruptcy law, to the original Bankruptcy Act, is that something was entrusted to you and you did something wrong with it. We gave you something and you didn't properly handle it. The payments under a collective bargaining agreement are generally to be paid when the employee is paid. But you're supposed to, generally, you're supposed to pay the, make your contributions to the funds at the same time that you pay your employee. Sort of. And this is, that brings up a good point. There's the question of withholding from the employee's wages, and that would indeed be a sufficient trust rest, versus where nothing has been withheld and then the obligation would be calculated when the employee reports the hours and there would be a report submitted to the trust fund or to the union, as the case may be, and that would define the obligation. So when the worker does the work, the week is up or the two weeks are up, the report is submitted, now we can calculate the obligation. And that would be a typical contribution, not a withdrawal liability. Well, now, could Mr. Moxley have, let's say he just retired and he wasn't in business anymore, would there, could, would this be, would this be a different case? Yes, Your Honor, there wouldn't be a withdrawal liability. At all? No. The withdrawal liability doesn't come into play until he terminates the, the agreement, the collective bargaining agreement is terminated with him, right? And he no longer has obligations to make contributions to that agreement. There's a construction industry exception. It's, but basically that's right. The statute says that withdrawal liability in the construction industry arises when your obligation to make contributions under the plan terminates and you still work in the jurisdiction. Then we start computing withdrawal liability, which is not based on your, you could be totally paid up on your contributions when you get out of the plan and still have withdrawal liability. Isn't that right? I believe it is, Judge Ranz. I think that is right. There's a district court of Massachusetts case that explains withdrawal liability and I believe they make that point that you could be totally paid up on your contributions and still accrue withdrawal liability because it's based on the unfunded obligations in the pension fund at the time you leave, fund-wide. That's right. Not just your little people, but fund-wide. What we're talking about here are contributions that weren't made for hours that had been worked, aren't they? Well, I'm conflating the two because I have a vested interest. I understand that, but I'm not sure that we should be conflating the two. And if we keep it to the narrow effect, I'm trying to get the Court to clarify a very confusing issue because this whole idea of exceptions to Klein and Collins in the bankruptcy context really just doesn't work unless there's been some withholding and a tangible trust rest. But, Judge Ranz, you're right. In this case, before this Court today, we're dealing with a withdrawal liability. Okay. Let's just say we can look at the trust agreement here. Let's just hypothetically go there. Is there a way this could have been written more clearly that would be, that present more difficulties for your client? Absolutely. Okay. Can you tell me what that would have been? Well, first of all, the language in the trust agreement as it stands is extremely confusing because the term contribution, and I'm reading from the excerpt of the record at page 407, the term contribution is defined. It's defined in Article 12. And then in Section 1, the term, the capitalized term contribution is used again. And the way I always do this is I substitute the definition for the word and I plug it in and I read it. And when you do that, it makes no sense. Just looking at the word contribution in the context of the way they say all contributions required by the collective bargaining agreement or subscriber's agreement to be made for the establishment and maintenance, how does that work when the term contribution itself means payment, the payment made to the fund by any individual employer? So you've already got contribution as a defined term as the payment made to the fund, and then you plug it into this Section 1 and you get, to me, it's gibberish. It doesn't even go where I think the plaintiff says it goes. So had they done a better job of it, and if the court is going to find, yes, there's going to be an exception to the general rule of Klein and Collins that unpaid contributions, whether or not withheld from employee paychecks and or withdrawal liabilities are going to be included because they're planned assets, that is a sufficient trust rest. We're not going to even talk about defalcation and Bullock, et cetera. Then clearly it needs to be better defined so that employers, debtors, understand it, because as a lawyer, I read this in the context of does it include contributions to be made, and it really doesn't say that. Do we have any cases that have stronger language? Yes. Your Honor, there's a series of cases. They're cited in the briefs. There's one, I'm not sure I'm going to remember off the top of my head, but there was a case out of the Northern District. I think Judge Montali authored it that talks about the exception. It was in a non-bankruptcy context. You've got the Bose case that talks about it out of the Eastern District. That was Judge England. And there are other cases. But we don't have any circuit cases. Circuit cases? No, Your Honor. That's why we're both at polar opposites here. We're trying to move the court to give some guidance to lower courts, because it is very, very confusing. There's a lot of courts that don't even accept the fact that there is an exception to Klein and Collins. And let me take one minute and just talk about Bullock. Well, but as a three-judge panel of the Ninth Circuit, and Judge Schroeder is sitting right over here saying there is an exception, aren't we bound by that? And then we just have to decide whether this is an exception? I didn't hear that. Was there? Did I just? Did the court just make a ruling? My goodness. But if, okay, if there's going to be an exception. I'm mouthing arguments. If there's going to be an exception to Klein and Collins, we're going to have to figure out how that applies in the context of the Bankruptcy Code, where traditionally in order to be held liable for a nondischargeable debt, you have to do something wrong with something entrusted to you. That's, that's, that's, that thread is through all the cases, going back to, my goodness, the 1900s. How do you do that where nothing has been entrusted to you other than an obligation to pay something? You don't, it just, it just, you can't do it. You can't get there from here. And, and what made it clear. Well, I don't know that we have to get there from here, but you could. You can get there. You don't have to. You're right, Your Honor. You don't have to. I want you to, but you don't have to. But when you look at Bullock, and I had to do this for the first time very recently, and you say, okay, I have to evaluate the actor's state of mind to find whether or not there's a culpable state of mind. What is it that the actor did or didn't do? What is the actual act of defalcation here? The only answer you're going to get is the failure to pay. That's the only thing that could be. I don't, I don't know that that, I don't know we, that that's necessarily true. That used to be true, the failure to pay. It seems to me that under Bullock there has to be more than a failure to pay. There has to be an intentional decision. Because lots of decisions that I'm not going to pay this, I'm going to pay something else instead. Because it's very easy to say I'll pay that tomorrow and then discover tomorrow you don't have the money. And that under, I'm not sure that under Bullock that would be a defalcation. Well, that's a great point. And that was the point that I made in the letter brief that I wrote about Bullock. When do you take the picture? When do you freeze the frame and say, aha, we have a defalcation? Well, I'm not sure that your adversary necessarily disagrees with you. I just think that I'm not sure that that's, we have to decide that now. If you get to the next step, I'm not sure that you can decide it based on the record. It would have to be a remand. It would have to be a remand. But I think that that was what your adversary indicated already. Yes, Your Honor, he did. I'm out of time. Well, let me just find out if my colleagues have any additional questions, because this is a difficult case. All right. Thank you for your argument. Thank you very much, Your Honor. Thank you. I think you have a minute and 40 seconds. The risk imposes a very powerful prudentiary duty. It does so in a manner that's calculated towards the scope of the duty involved. A person is charged with the duties of prudence and loyalty to the extent, to the extent of their control over the disposition. For the fund to survive, and this is true of other funds, for the fund to survive there simply has to be a way of protecting the funds, a fair manner, in the eyes of Congress, was struck with the amendments in the late 70s to establish the withdrawal liability procedure. It doesn't come out of the blue. It is true it's based upon the entire fund, but the share of it is calibrated towards the employer's participation, and so that there is, you know, there is a fairness in that way. The background law, I would submit, is something that we all live with in all of our business dealings. But if this has been going on for so long, why don't we have a Supreme Court case? Why don't we have a court of appeal case, you know? I'm just wondering why hasn't there been anything up to this point? Because I agree, ERISA is, albeit somewhat boring in certain ways, but for those of you that practice in it, I know that you're fascinated every day. But the importance is absolutely clear, and the Supreme Court has had an interest in it. And I'm just kind of surprised that it's taken this long, you know, why we don't have more on it. Because, see, he can't be the only person that's been in this position. I can't believe that. I'm sure that's true. Sometimes the calculus is made, well, is there any money there, why bother? And that does happen. I'll just offer that. To clear up one point, I think counsel may have misspoken or I misheard, but there are court of appeals decisions applying the concept of look at the trust agreement. Right. We do lay them out in the brief, but not on withdrawal liability. If you could just answer one question for me, you've used your time. Yes, ma'am. But what is your response to the argument that the definition of contribution in the trust agreement is the payment made to the fund, not the payment required or owed, but the payment made, so that the race is payments that have already been made? The payment? The definition of contribution. The definition of contribution. Is the payment made to the fund by an individual employer, which would appear to suggest, the argument is made, that that means that it isn't a contribution until it is made. And therefore, the race has to include only those that have already been made, not liability. That have already been made. Right. I went back to grammar school on this, really. I could suggest the dictionary of contemporary American English usage, Evans and Evans, it was random house, there's a reprint. What would it tell me? It would tell you this, that words such as made, it's a past participle, it's actually used as an adjective, and an adjective, here is the point. It has no tense. Prove it. The proof is contributions to be made in the future. Contributions made in the past. Contributions made at some time. Here's some examples. He received a receipt for the payment made to the fund. He will receive a receipt for the payment made to the fund next month. It all says made to the fund. I understand. There is no tense. I'm saying there's no tense, it's made, no, but there is none, analytically. I think we understand your argument. Thank you. That answers, and we've taken you three minutes over, so that's going to conclude the argument. I thank both of you for your argument. This is a difficult and interesting case, and thank you both. This matter stands submitted.
judges: Vance, Schroeder, Callahan